UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

RUFUS L. SPEARMAN,

                Plaintiff,

v.

S. ADAMCZAK et al.,

                Defendants.

_____/

Case No. 1:25-cv-1041

Honorable Jane M. Beckering

**OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. In a separate Order, the Court granted Plaintiff leave to proceed *in forma pauperis.* Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

**Discussion**

**I.     Factual Allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the St. Louis Correctional Facility (SLF) in St. Louis, Gratiot County, Michigan. The events

about which he complains, however, occurred at the Oaks Correctional Facility (ECF) in Manistee, Manistee County, Michigan. Plaintiff sues the MDOC, the State Administrative Board, the Prisoner Benefit Fund Committee, and the following individuals: Correctional Property Room Officers S. Adamczak and Unknown Hendrick, Warden Michael Burgess, Assistant Deputy Wardens J. Clouse and D. Krause, Administrative Assistant S. O'Brien, Business Manager S. Spencley, and Assistant Resident Unit Supervisor and Acting Deputy Warden J. Erway.

Plaintiff alleges that, in February 2021, Plaintiff purchased a new television, headphones, a beard and mustache trimmer, and a fan. (Compl., ECF No. 1, PageID.11.)

On June 8, 2021, Plaintiff was issued a "fraudulent threatening behavior misconduct report in retaliation for apparently complaining about Unit 2's inadequate legal mail procedure" and was placed in segregation. (*Id.*, PageID.12.) That evening, non-party Officer Loehne brought Plaintiff some of Plaintiff's property but told Plaintiff that he had thrown away two of Plaintiff's shirts. (*Id.*) Plaintiff's headphones and fan were also broken. (*Id.*) Plaintiff was able to use the broken headphones and fan; however, a contraband removal record and misconduct report were issued to Plaintiff for the headphones. (*Id.*) Plaintiff filed a grievance against Officer Loehne concerning the loss and destruction of Plaintiff's property. (*Id.*, PageID.13.) Plaintiff's grievance was rejected by a non-party Grievance Coordinator and a non-party Assistant Deputy Warden. (*Id.*)

On or about December 2, 2021, Plaintiff "was being retaliated against by staff" for making complaints of sexual abuse. (*Id.*) Plaintiff was issued a misconduct report and placed in segregation. (*Id.*)

On or about December 22, 2021, Plaintiff filed a grievance against non-party Officer Schaffer for failing to issue Plaintiff personal property receipts and secure Plaintiff's property. (*Id.*)

On or about March 30, 2022, Plaintiff was referred to the START program after refusing to leave segregation. (*Id.*) He began the START program on May 3, 2022. (*Id.*)

On or about May 6, 2022, Defendants Adamczak and Hendrick issued Plaintiff a contraband removal record and misconduct report for the destruction or misuse of personal property. (*Id.*, PageID.14.) According to MDOC policy, a hearing should have been conducted on this misconduct charge but was not. (*Id.*) Plaintiff subsequently filed a grievance against multiple officers, including Defendants Adamczak and Hendrick, regarding the failure to safeguard Plaintiff's property from December 2, 2021, to May 10, 2022. (*Id.*) Plaintiff's grievance was rejected. (*Id.*)

On or about May 23, 2022, Plaintiff filed a property claim with the State Administrative Board. (*Id.*, PageID.14–15.)

On or about June 5, 2022, Plaintiff submitted a grievance concerning sanctions he received, the reason for which was never disclosed to Plaintiff. (*Id.*, PageID.15.)

Plaintiff wrote to non-party Grievance Coordinator J. Bassett on October 8, 2022, inquiring about the status of Plaintiff's property claim. (*Id.*) On October 19, 2022, Plaintiff learned that his claim had been sent to the Warden and then to "COF," and that the State Administrative Board had approved "$0.00." (*Id.*) Plaintiff sent letters to Defendant Burgess and non-party Inspector MacKay about his claim but did not receive a response. (*Id.*, PageID.16.)

On or about March 11, 2023, Plaintiff filed a complaint with the Legislative Corrections Ombudsman's Office concerning the lack of response from "ECF administrative staff." (*Id.*) Plaintiff did not receive a response from the Legislative Corrections Ombudsman's Office. (*Id.*) Plaintiff later learned that the State Administrative Board had denied Plaintiff's property claim. (*Id.*)

Following the denial of his property claim, Plaintiff requested a Prisoner Benefit Fund reimbursement form from non-parties. (*Id.*) When Plaintiff did not receive a form, he filed a grievance, which was rejected on the basis that no such form existed. (*Id.*) Plaintiff was told to submit a letter to the Prisoner Benefit Fund for reimbursement, which Plaintiff did on March 19, 2024. (*Id.*, PageID.17.) In his letter, Plaintiff asked for replacement property rather than monetary compensation. (*Id.*)

In May 2024, Plaintiff learned that the Unit 3 representative had approved Plaintiff's Prisoner Benefit Fund claim. (*Id.*, PageID.17–18.) However, Plaintiff never received his property. (*Id.*, PageID.18.)

Plaintiff alleges violations of his rights to due process and equal protection. (*Id.*, PageID.9.) He also brings claims for the "deprivation of property" and seeks injunctive and monetary relief. (*Id.*, PageID.20–21.)[1]

## II.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the

---

[1] Because Plaintiff specifically identifies the claims he intends to bring in this lawsuit, the Court will not construe Plaintiff's complaint to raise any additional claims.

plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. Claims Against the MDOC, the State Administrative Fund Committee, and the Prisoner Benefit Fund Committee

Plaintiff names the MDOC, the State Administrative Fund Committee, and the Prisoner Benefit Fund Committee as Defendants. However, § 1983 expressly requires that a named defendant be a "person." *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). Courts have long held that the State of Michigan, acting through the MDOC, the State Administrative Fund Committee, and the Prisoner Benefit Fund Committee, is not a "person" that may be sued under § 1983 for money damages. *See Lapides v. Bd. of Regents*, 535 U.S. 613, 617 (2002) (citing *Will*

5

*v. Mich. Dep't of State Police*, 491 U.S. 58 (1989) and holding that the MDOC is not a "person" for purposes of § 1983). For this reason alone, Plaintiff's complaint fails to state a § 1983 claim upon which relief may be granted against the MDOC, the State Administrative Fund Committee, and the Prisoner Benefit Fund Committee.

### B.     Claims Against Defendants Clouse, Krause, O'Brien, Spencley, and Erway

Plaintiff lists Defendants Clouse, Krause, O'Brien, Spencley, and Erway as parties but makes no factual allegations against these Defendants within the body of his complaint.

It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 544 (holding that, to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim). The Sixth Circuit "has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what each defendant did to violate the asserted constitutional right." *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008) (citing *Terrance v. Northville Reg'l Psych. Hosp.*, 286 F.3d 834, 842 (6th Cir. 2002)). Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing the plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights); *Griffin v. Montgomery*, No. 00-3402, 2000 WL 1800569, at *2 (6th Cir. Nov. 30, 2000) (requiring allegations of personal involvement against each defendant) (citing *Salehpour v. Univ. of Tenn.*, 159 F.3d 199, 206 (6th Cir. 1998)); *Rodriguez v. Jabe*, 904 F.2d 708 (6th Cir. 1990) ("Plaintiff's claims against those individuals are without a basis in law as the complaint is totally devoid of allegations as to them which would suggest their involvement in the events leading to his injuries.").

Plaintiff makes allegations against "staff" and "administration;" however, these factual allegations, even if construed against Defendants as a group, are insufficient to implicate any named Defendant. "Summary reference to a single, five-headed 'Defendants' [or officers or staff] does not support a reasonable inference that each Defendant is liable . . . ." *Boxill v. O'Grady*, 935 F.3d 510, 518 (6th Cir. 2019) (citation omitted). Thus, Plaintiff's claims against Defendants Clouse, Krause, O'Brien, Spencley, and Erway fall far short of the minimal pleading standards under Rule 8 of the Federal Rules of Civil Procedure and will be dismissed. Fed. R. Civ. P. 8(a)(2) (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief").

### C.    Fourteenth Amendment Due Process Claims

Plaintiff brings claims for violation of his Fourteenth Amendment right to due process. The Fourteenth Amendment protects an individual from deprivation of life, liberty[,] or property, without due process of law." *Bazzetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005). To establish a Fourteenth Amendment procedural due process violation, a plaintiff must show that one of these interests is at stake. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Analysis of a procedural due process claim involves two steps: "[T]he first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989) (citations omitted).

### 1.    Confiscation and Destruction of Property

Plaintiff specifically brings Fourteenth Amendment claims concerning the confiscation and destruction of his property. However, any such claims are barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986). Under *Parratt*, an individual deprived of property by a "random and unauthorized act" of a state employee cannot maintain a federal due process claim unless the state fails to afford an adequate post-

7

deprivation remedy. If an adequate post-deprivation remedy exists, the deprivation, while real, is not "without due process of law." *Id.* at 537. This doctrine applies to both negligent and intentional deprivations of property, as long as the deprivation was not pursuant to an established state procedure. *See Hudson v. Palmer*, 468 U.S. 517, 530–36 (1984). Plaintiff must plead and prove the inadequacy of state post-deprivation remedies. *See Copeland v. Machulis*, 57 F.3d 476, 479–80 (6th Cir. 1995); *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993). The Sixth Circuit has noted that a prisoner's failure to sustain this burden requires dismissal of his § 1983 due process action. *See Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985).

The Court notes that numerous state post-deprivation remedies are available to Plaintiff. First, a prisoner who incurs a loss through no fault of his own may petition the institution's Prisoner Benefit Fund for compensation. Mich. Dep't of Corr., Policy Directive 04.07.112, ¶ B (effective Nov. 13, 2023). Second, aggrieved prisoners may also submit claims for property loss of less than $1,000 to the State Administrative Board. Mich. Comp. Laws § 600.6419; MDOC Policy Directive 03.02.131 (effective May 20, 2024). And third, Michigan law authorizes actions in the Court of Claims asserting tort or contract claims "against the state or any of its departments or officers." Mich. Comp. Laws § 600.6419(1)(a) (eff. Nov. 12, 2013). The Sixth Circuit has specifically held that Michigan provides adequate post-deprivation remedies for deprivation of property. *See Copeland*, 57 F.3d at 480.

Here, Plaintiff claims that his state post-deprivation remedies are inadequate. He alleges that the MDOC and State Administrative Board provide inadequate procedures for processing, investigating, and responding to prisoner claims of property loss. (Compl., ECF No. 1, PageID.20.) However, Plaintiff's complaint alleges that Plaintiff submitted a claim to the State Administrative Board and that his claim was processed and denied. The fact that Plaintiff used this avenue, but

did not obtain a favorable outcome, does not create a constitutional claim. *See Skinner v. Bolden,* 89 F. App'x 579, 580 (6th Cir. 2004) ("adequate post-deprivation process does not require a favorable result for the claimant"). To satisfy due process, the post-deprivation remedy does not have to guarantee a successful outcome, nor is it required to provide relief equivalent to that available in a § 1983 action. *See Parratt*, 451 U.S. at 543-44. As the Court has instructed: "Although the state remedies may not provide . . . all the relief which may have been available . . . under § 1983, that does not mean that the state remedies are not adequate to satisfy the requirements of due process." *Id.* at 544. Due process only requires that an adequate post-deprivation remedy be available when the deprivation of property occurs. *Id.* Moreover, even if Plaintiff cannot seek reimbursement through the State Administrative Board or the Prisoner Benefit Fund, Plaintiff does not allege the remaining state post-deprivation remedies through the Court of Claims are inadequate. Accordingly, Plaintiff's Fourteenth Amendment claims concerning the deprivation of his property will be dismissed.

### 2.    Use of the Grievance Process

Given Plaintiff's allegations, the Court will also liberally construe Plaintiff's complaint as bringing due process claims concerning Plaintiff's use of the grievance process. However, Plaintiff has no due process right to file a prison grievance. The courts repeatedly have held that there exists no constitutionally protected due process right to an effective prison grievance procedure. *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.,* 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy,* 30 F. App'x 568, 569–70 (6th Cir. 2002); *Carpenter v. Wilkinson,* No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases). Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona,* 461 U.S. 238, 249 (1983);

*Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994). Because Plaintiff has no liberty interest in the grievance process, the conduct of Defendants did not deprive Plaintiff of due process.

### 3.      Misconduct Charges

As to any due process claims concerning his misconduct hearings, the Supreme Court has long held that the Due Process Clause does not protect every change in the conditions of confinement having an impact on a prisoner. *See Meachum v. Fano*, 427 U.S. 215, 225 (1976). A prisoner's ability to challenge a prison misconduct conviction therefore depends on whether the conviction implicated any liberty interest. A prisoner does not have a protected liberty interest in prison disciplinary proceedings unless the sanction "will inevitably affect the duration of his sentence" or the resulting restraint imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *See Sandin v. Conner*, 515 U.S. at 484, 487.

The allegations of Plaintiff's complaint do not plausibly suggest that Plaintiff's misconduct convictions affected any interests that would fall into either of the categories identified in *Sandin* as protected by due process, i.e., an inevitable effect on the duration of Plaintiff's sentence or an atypical and significant hardship.

First, Plaintiff alleges that Defendants Adamczak and Hendricks issued Plaintiff a misconduct report for the destruction or misuse of personal property (Compl., ECF No. 1, PageID.14), a Class II misconduct. MDOC Policy Directive 03.03.105, Att. B (eff. Apr. 18, 2022). The Sixth Circuit has routinely held that misconduct convictions that do not result in the loss of good time are not atypical and significant deprivations and therefore do not implicate due process. *See, e.g.*, *Ingram v. Jewell*, 94 F. App'x 271, 273 (6th Cir. 2004), *overruled on other grounds by Maben v. Thelen*, 887 F.3d 252 (6th Cir. 2018); *Carter v. Tucker*, 69 F. App'x 678, 680 (6th Cir. 2003); *Green v. Waldren*, No. 99-1561, 2000 WL 876765, at *2 (6th Cir. June 23, 2000); *Staffney*

*v. Allen*, No. 98-1880, 1999 WL 617967, at *2 (6th Cir. Aug. 12, 1999). Under MDOC Policy Directive 03.03.105, ¶ C (eff. Apr. 18, 2022), a Class I misconduct is a "major" misconduct and Class II and III misconducts are "minor" misconducts. The policy further provides that prisoners are deprived of good time or disciplinary credits only when they are found guilty of a Class I misconduct. *Id.* ¶ DDDD. Here, because Defendants Adamczak and Hendricks issued Plaintiff a Class II misconduct charge, Plaintiff's misconduct charges could not have resulted in the loss of good time credits.

Second, Plaintiff has not alleged facts that would plausibly suggest that he suffered a "significant and atypical deprivation" as a result of this misconduct charge. Indeed, Plaintiff does not allege what sanction, if any, he received because of the Class II misconduct report issued by Defendants Adamczak and Hendricks. Accordingly, Plaintiff cannot state a claim for violation of his Fourteenth Amendment right to procedural due process based upon the Class II misconduct report issued by Defendants Adamczak and Hendricks. The Court will dismiss any such claims.[2]

### 4.    Violation of MDOC Policy

Throughout his complaint, Plaintiff faults Defendants and others for not abiding by MDOC policies and procedures. Such assertions, however, fail to state a constitutional claim. Claims under § 1983 can only be brought for "deprivations of rights secured by the Constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). Section 1983 does not provide redress for a violation of state law or prison policy. *Pyles v. Raisor*, 60 F.3d 1211, 1215

---

[2] Plaintiff alleges that he received other misconduct charges but does not implicate any named Defendant in those additional charges. As with any § 1983 claim, "each [g]overnment official, his or her title notwithstanding, is only liable for his or her own misconduct." *Iqbal*, 556 U.S. at 676. Thus, it remains Plaintiff's obligation to attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 544. Because Plaintiff does not allege any facts that would plausibly suggest that any of the named Defendants were personally involved in any additional misconduct charges, Plaintiff fails to state any additional § 1983 claims.

11

(6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994); *see also Laney v. Farley*, 501 F.3d 577, 580–81 & n.2 (6th Cir. 2007). Additionally, courts routinely have recognized that a prisoner does not enjoy any federally protected liberty or property interest in state procedure. *See Olim v. Wakinekona*, 461 U.S. 238, 250 (1983); *Laney*, 501 F.3d at 581 n.2; *Brody v. City of Mason*, 250 F.3d 432, 437 (6th Cir. 2001); *Sweeton*, 27 F.3d at 1164; *Smith v. Freland*, 954 F.2d 343, 347–48 (6th Cir. 1992); *Barber v. City of Salem*, 953 F.2d 232, 240 (6th Cir. 1992). Accordingly, any claims premised upon violations of MDOC policy and procedure will be dismissed.

### D.    Fourteenth Amendment Equal Protection Claim

Finally, Plaintiff alleges that Defendants' actions violated Plaintiff's right to equal protection. (Compl., ECF No. 1, PageID.9.) The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. U.S. Const. amend. XIV; *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). To state an equal protection claim, Plaintiff must plead facts to show "intentional and arbitrary discrimination" by the state; that is, Plaintiff must show that Plaintiff "has been intentionally treated differently from others similarly situated." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). The threshold element of an equal protection claim is disparate treatment. *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006). Further, "'[s]imilarly situated' is a term of art—a comparator . . . must be similar in 'all relevant respects.'" *Paterek v. Vill. of Armada*, 801 F.3d 630, 650 (6th Cir. 2015) (quoting *United States v. Green*, 654 F.3d 637, 651 (6th Cir. 2011)).

Plaintiff's complaint contains no facts or allegations whatsoever to support an equal protection claim. Instead, Plaintiff's allegations of discriminatory treatment are wholly conclusory,

which fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555. Accordingly, Plaintiff's equal protection claim will be dismissed.

### III.   Motion for Hearing

On February 9, 2026, Plaintiff filed a motion asking the Court to hold a hearing on Plaintiff's September 5, 2025 motion for the Court to take judicial notice of certain facts. (ECF No. 7.) Because the Court has denied Plaintiff's motion to take judicial notice (ECF No. 4) in a written Order entered on February 2, 2026, and because the Court will dismiss Plaintiff's complaint as set forth herein, the Court will dismiss Plaintiff's motion for a hearing (ECF No. 7) as moot.

### Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's complaint will be dismissed without prejudice for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court does not certify that an appeal would not be taken in good faith. Should Plaintiff appeal this decision, the Court will assess the full appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610–11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the appellate filing fee in one lump sum.

The Court will also dismiss Plaintiff's motion for a hearing (ECF No. 7) as moot.

An Order and Judgment consistent with this Opinion will be entered.


Dated:      May 11, 2026                    /s/ Jane M. Beckering
                                         Jane M. Beckering
                                         United States District Judge